Pietsch v. Sangor, 173 Wis. 301.

PIETSCH, Respondent, vs. SANGOR and another, Appellants.

*January 12—February 8, 1921.*

*Mechanics' liens: Waiver by taking note: Discharge of lien: Evidence.*

1. Where a subcontractor, on the delivery to him of a note, agreed in writing to waive his subcontractor's lien upon payment of the note, the execution by him of a further release or waiver was not a condition precedent to the right of recovery on the note, since the agreement itself constituted a waiver of the lien, to become effective upon the payment of the note, and since the payment of the note would of itself extinguish the lien, making the formal execution of a waiver a superfluous formality.

2. In a subcontractor's action against a landowner, the evidence is *held* insufficient to warrant a finding that the amount received by the owner from the contractor's surety included an item for the amount due from the contractor to the subcontractor.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Reversed.*

Sophie K. Sangor, in her lifetime, undertook the erection of an apartment building on premises owned by her in the city of Milwaukee. Her husband, *B. W. Sangor*, was her general agent in all matters relating to the enterprise. She contracted with Lex Brothers, general builders, for the construction of the building. Lex Brothers executed a bond to her, conditioned for the faithful performance of the contract, in the sum of $10,000, with the Royal Indemnity Company as surety. Lex Brothers sublet the iron work to the plaintiff, and shortly thereafter plaintiff served Sophie K. Sangor with a preliminary notice of intention to claim a

subcontractor's lien under and by virtue of the provisions of sub. 1, sec. 3315, Stats. 1915. Before the completion of the building Lex Brothers failed. At that time there was due the plaintiff on the subcontract for the iron work about $500. He demanded payment of this amount from the defendant. The defendant delivered to plaintiff his personal note for $500, payable sixty days from date, and at the same time the plaintiff executed and delivered to the defendant a writing which, after reciting that plaintiff had furnished the iron for the erection of the apartment house and had served a notice of lien, concluded as follows:

"Now, therefore, in consideration of a note of five hundred dollars executed by *B. W. Sangor* to said *Ferdinand Pietsch* and delivered to him, payable on or before sixty days from the date of these presents, it is hereby understood that upon payment to said *Ferdinand Pietsch* of said note, said undersigned, *Ferdinand Pietsch*, waives his lien for the payment of the above amount in the above described property for all the iron and other materials furnished to Lex Brothers as contractors."

When the note became due the plaintiff demanded payment. The defendant *B. W. Sangor* offered to pay the amount thereof upon condition that the plaintiff execute an additional release and waiver of lien, which he refused to do. The defendant *B. W. Sangor* declining to pay unless such release be executed, plaintiff brought this action in the civil court of Milwaukee county against *B. W. Sangor* and Sophie K. Sangor to recover the amount of the note, as well as for certain extras which he claimed to have furnished under circumstances making the defendant Sophie K. Sangor personally responsible therefor. During the pendency of the action the defendant Sophie K. Sangor died, and the action was revived against *B. W. Sangor* as administrator of her estate.

The civil court held that the refusal of the plaintiff to execute a further waiver of the lien as a condition precedent to the payment of the note amounted to a breach of the

contract authorizing a rescission thereof by the defendant
*B. W. Sangor,* and that, *B. W. Sangor* having rescinded the
contract, plaintiff could not recover on the note.  Judgment
was rendered, however, in favor of plaintiff and against
defendant for $78.48, the amount of the extras which plaint-
iff claimed to have been furnished.

Upon appeal the circuit court for Milwaukee county re-
versed the judgment of the civil court, and, upon the record,
rendered judgment against *B. W. Sangor* individually and
as administrator of the estate for the sum of $500,. and
against the defendant as administrator of the estate of
Sophie K. Sangor judgment was rendered for the further
sum of $78.48, the amount of the extras.  From the judg-
ment so rendered, and from every part thereof, the defend-
ant appealed.

The cause was submitted for the appellants on the briefs
of *Michael Levin* of Milwaukee, and for the respondent on
the brief of *Austin, Fehr, Mueller & Gehrz,* attorneys, and
*A. W. Schutz,* of counsel, all of Milwaukee.

OWEN, J.  For consideration, the judgment may be di-
vided into three parts: first, $78.48 rendered against the
defendant *B. W. Sangor* as administrator; second, $500
rendered against him as administrator; and third, the same
amount rendered against *B. W. Sangor* personally.  As to
the first part, the civil court found that extras to the amount
of $78.48 were furnished by the plaintiff.  This was affirmed
by the circuit court.  We think the evidence sustains the
finding, and nothing further need be said with reference to
this part of the judgment.

Should judgment have been rendered against *B. W.
Sangor* for the amount of $500, with interest from the date
of the note?  This turns upon the question whether the
defendant *B. W. Sangor* had a right to demand of the plaint-
iff the execution of a further release or waiver of lien as a
condition precedent to the payment of the amount of the

note. In the collateral agreement executed concurrently with the note occurs the following:

"It is hereby understood that upon payment to said *Ferdinand Pietsch* of said note, said undersigned, *Ferdinand Pietsch*, waives his lien for the payment of the above amount, in the above described property for all the iron and other materials furnished to Lex Brothers as contractors."

The civil court held that this called for the execution of a further release or waiver by *Pietsch* before he could insist upon the payment of the note. The circuit court held that the language quoted in and of itself constituted a waiver of the lien, to become effective upon the payment of the note. We agree with the construction placed thereon by the circuit court, and we think that upon the payment of the note the provision quoted became a self-executing waiver or release. Furthermore, the payment of the $500 note in and of itself extinguished the lien, and the execution of a waiver therefore became a superfluous formality. We therefore hold that the defendant *B. W. Sangor* had no defense to the action.

But we have been unable to find any warrant in the record for the judgment against the estate for the sum of $500. The theory upon which the circuit court rendered judgment for this amount against the estate does not very plainly appear. But the respondent seeks to justify it on the following grounds: When Lex Brothers defaulted, Sophie K. Sangor prosecuted an action against the surety company to recover on the bond, and in that action *B. W. Sangor* testified that he had been obliged to pay this $500 to the plaintiff, and it is conceded in this action by *B. W. Sangor* that the $500 was included in the judgment recovered against the surety company. It is claimed by respondent that he is entitled to recover in this action for money had and received, on the theory that the estate received from the surety company the $500 to which plaintiff is entitled. The evidence with reference to this transaction is very meager. It con-

sists entirely of admissions made by the defendant *B. W. Sangor*. He admits that judgment was recovered against the surety company, but the record does not disclose the amount thereof. He admits also that the $500 was included in the judgment. He denies that the entire amount of the judgment has been paid. He says: "Parts of it was paid and part is still unpaid, in which Lex Brothers is still liable to the extent of about thirty-five (hundred) or four thousand dollars. They paid about fifty-five hundred dollars. That was in settlement as compromise." He then testified as follows:

"*Q*. And to help make up the $5,500 you testified paying $500 to *Mr. Pietsch? A*. No, sir. *Q*. But you did testify— *A*. I testified paying $500 to show the actual loss sustained by the owner by reason— *Q*. So that to make up your lien you included this $500 item? *A*. To make up the lien, yes. *Q*. And you did collect $5,500 from the bonding company? *A*. Yes, sir."

There is no finding by either court that this $500 item constituted a part of the payment actually made by the indemnity company to the estate, and we think the evidence altogether too meager to justify our conclusion to that effect. This part of the judgment must be reversed and the cause remanded for a new trial upon this issue.

While to accomplish this the entire judgment must be reversed, there need be no further trial with reference to the liability of *B. W. Sangor* on the $500 note nor the liability of the estate for the amount of the extras. Those issues stand adjudicated. The new trial should be confined to the question of the liability of the estate in the sum of $500 for money had and received.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.